IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. KAUFMAN,

                   OPINION AND ORDER

              Plaintiff,

       v.                      07-cv-0045-bbc

RICHARD SCHNEITER (WSPF Warden);
PETER HUIBREGTSE (WSPF Deputy Warden);
RANDALL HEPP (JCI Warden); and CARI TAYLOR
(JCI Deputy Warden),

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for declaratory, injunctive and monetary relief, plaintiff James Kaufman is proceeding on claims that (1) defendant Randall Hepp transferred him to the Wisconsin Secure Program Facility because plaintiff sued him in Case No. 06-C-205-C; (2) defendants Richard Schneiter and Peter Huibregtse violated his First Amendment rights by upholding a prison policy under which he is denied all publications; (3) defendant Cari Taylor violated his rights under the First Amendment by dismissing a complaint for non-delivery of a letter from Robert Bernard received on or about September 5, 2006; (4) defendants Schneiter and Huibregtse violated his right to practice his atheist beliefs by

1

preventing him from ordering publications about atheism in violation of the free exercise clause and RLUIPA; (5) defendant Huibregtse violated his rights under the establishment clause by refusing to provide plaintiff with atheist reading material while providing religious reading material to Christian inmates; and (6) defendant Schneiter violated his rights under the Eighth Amendment by forcing him to choose between out-of-cell exercise and time spent in the prison law library.

Now before the court is defendants' unopposed motion for summary judgment. From defendants' proposed findings of fact, I find the following facts to be undisputed.

UNDISPUTED FACTS

A.  Parties

Plaintiff James Kaufman was a Wisconsin Department of Corrections inmate who was released on June 12, 2007.  From February 27, 3003 through September 6, 2006, plaintiff resided at Jackson Correctional Institution.  He was transferred to the Wisconsin Secure Program Facility on September 6, 2006, where he resided until his release on June 12, 2007.

Defendant Richard Schneiter is employed by the Department of Corrections as a Correctional Services Manager at the Central Office in Madison, Wisconsin.  Defendant Schneiter was the warden at Wisconsin Secure Program Facility at the time of plaintiff's arrival there until May 15, 2007, when he was succeeded by defendant Peter Huibregste.

2

Prior to his appointment as warden, defendant Huibregtse was the deputy warden for the Wisconsin Secure Program Facility from April 2000 through May 14, 2007.

Defendant Randall Hepp is employed by the Department of Corrections as warden at Jackson Correctional Institution.  He has held this position since May 20, 2004.

Defendant Cari Taylor is employed by the Department of Corrections as the deputy warden at Jackson Correctional Institution.

### B.  Transfer to The Wisconsin Secure Program Facility

The Department of Corrections has a process by which inmates are reviewed for security classification, institution assignment and program assignment.  This process is referred to as a program review.  The program review process is set forth in Wisconsin Administrative Code DOC Chapter 302.  Every Department of Corrections correctional institution has a Program Review Committee.  The committee reviews and makes recommendations related to placement status for all inmates housed in Department of Corrections correctional institutions.

The Program Review Committee's recommendations are made to the Department of Corrections Bureau of Offender Classification and Movement Director or designee.  The committee uses criteria established in Administrative Code 302 when considering security classification and program assignments, including factors such as the inmate's behavior and

3

conduct record.  Defendant Hepp did not participate in the review, recommendations or determination regarding the security classification, transfer or program assignment of any inmate, including plaintiff.

On August 10, 2006, the Program Review Committee at Jackson Correctional Institution conducted a review of plaintiff's security classification.  At this time, the committee consisted of Tamera J. Waldera, Jeffrey L. Schelfelker and Timothy N. Vankirk. At the August 10, 2006 meeting, the committee considered plaintiff's conduct record, which included two major conduct reports within the preceding two days.  Plaintiff had received one conduct report for exchanging 75 envelopes and 35 stamps for meals and for possessing pornographic material.  Plaintiff had received another conduct report for posing as a Department of Corrections employee to obtain free samples and copies of materials.

Both conduct reports were issued as major offenses in violation of Wisconsin Administrative Code chapter DOC 303.  Inmates are not allowed to exchange property items, possess pornography or pose as Department of Corrections employees to obtain free samples or documents.  Allowing prisoners to exchange property items could lead to inmates buying and selling favors, including sexual favors.  Allowing prisoners to possess pornography could lead prisoners to engage in fights and strong-arm bartering, loss of inhibition and generally affect the treatment environment of the institution.  Allowing prisoners to pose as a Department of Corrections employee to a private entity could lead to harm to the private

entity.

Defendant Hepp knows that plaintiff named him as a defendant in a previous lawsuit. Defendant Hepp has been involved in numerous inmate-generated lawsuits throughout his tenure with the Department of Corrections.

## C.  Prison Speech Restrictions

### 1.  No-publications policy

The Wisconsin Secure Program Facility is a maximum-security correctional institution that receives and houses inmates who are serving long periods of disciplinary segregation. Inmates housed at the Wisconsin Secure Program Facility have a history of non-conforming and disruptive behavior in a correctional setting, including, but not limited to gang activity, engaging in the delivery of unlawful substances, assaults against other inmates and staff, rioting and taking hostages.  Many of the inmates have been found guilty of violent behavior towards other inmates or prison staff.  Other inmates have been transferred administratively to the facility because of such things as gang activities or escape histories.

Taking into account the types of inmates placed at the Wisconsin Secure Program Facility, the facility imposes restrictive security measures for the safety of staff, other inmates, visitors and the community.  All mail, including books, newspapers, magazines and other publications is monitored and scrutinized to avoid the distribution of contraband to

inmates and the promotion of illegal activities or the incitation of anger and violence among inmates.

The Wisconsin Secure Program Facility has used what is known as the "Program/Disciplinary Separation Step Program" to further its goal of improving inmate behavior and preparing the inmate for return to general population.  An inmate is placed into the step program on "Step One" when he receives disciplinary segregation time as a result of a conduct report disposition.  The step program grants privileges and responsibilities in "steps" to an inmate who demonstrates acceptable behavior over time.  The Segregation Review Team reviews each inmate in the step program every 30 days and makes recommendations related to an inmate's status to the security director and warden.

All inmates in the step program are provided with a clean mattress, lighting sufficient for reading purposes at least 12 hours a day, sanitary toilet and sink, ventilation and heating, meals, clothing, linen, soap, toothbrush, toothpaste, toilet paper, writing materials and envelopes.  In addition, all inmates are allowed 25 personal letters.  However, they are not allowed any periodicals, including magazines and newspapers.

Department of Corrections inmates in general population are allowed to receive books, magazines, newspapers and other publications that conform to Wisconsin Administrative Codes §§ DOC 309.04 and 309.05.

2. <u>Non-delivery of letter</u>

All Department of Corrections inmates are allowed to communicate with their family, friends, government officials, courts and others consistent with Department of Corrections policies and procedures.  Wisconsin Administrative Code § DOC 309.04(4)(c) prohibits Department of Corrections correctional staff from delivering incoming or outgoing mail if the mail concerns an activity that, if completed, would violate the laws of Wisconsin or the United States or Department of Corrections administrative rules, or if the mail is injurious or is inconsistent with the safety, treatment or rehabilitative goals of an inmate or poses a threat to those goals.

The offenses that led to plaintiff's incarceration include possession of child pornography and sexual exploitation of a child.  A letter from Bob Bernard was rejected for delivery on or about August 21, 2006.  The letter makes several references to "man/boy" relationships and to "NAMBLA," the acronym for the North American Man/Boy Love Association.  If plaintiff were allowed to possess the letter, he could show it to other inmates.

Defendant Hepp reviewed the "Notice of Non-Delivery of Mail/Publication" form DOC-243 and a copy of the letter deemed to be non-deliverable.  Defendant Hepp believes that the letter from Bob Bernard could be seen as advocating sexual relationships with children and, because plaintiff's conviction was for child-related offenses, it would be counterproductive and not in the best interests of plaintiff's rehabilitation efforts for him to

have received the letter signed by Bernard.

### D.  Religious Exercise and Available Religious Materials in Prison

1.  Prison policies

An inmate's participation in religious activities is voluntary.  At the Wisconsin Secure Program Facility, inmates are provided opportunities to practice their religion individually through study, personal meditation, approved religious books and literature, pastoral visits, other approved individual religious observances in their living quarters, correspondence with fellow believers and religious programming through videos and closed circuit television. Moreover, inmates may practice their religious faith in group-like settings through Umbrella Religion Group Religious Services, which are led by outside spiritual leaders or volunteers approved by the institution, and through Umbrella Religion Study Groups, also led by outside spiritual leaders or volunteers.

All Department of Corrections correctional institutions follow guidelines set forth in Internal Management Procedures DOC 309 IMP #6A, "Religious Property," to insure that inmates have access to religious items for personal use and during approved umbrella religious group use.  All religious property is subject to the normal security considerations.

Inmates at the Wisconsin Secure Program Facility may have their religious practices restricted if the practices conflict with one of the following concerns: (1) security practices

8

and principles; (2) rehabilitative goals of offenders; (3) health and safety; (4) allocation of limited resources; or (5) responsibilities and needs of the correctional institutions and facilities.

Atheism is considered a religion for purposes of Department of Corrections rules affecting religious practices.

For inmates in the step series program, religious counseling is available for religions recognized by the Department of Corrections. The chaplain coordinates religious services and can provide religious counseling at the cell front. Moreover, inmates in step three of the step series program can take advantage of religious programming through closed circuit television, but this is limited to the programming available.

Inmates may possess religious property items approved by the chaplain. In addition, the Wisconsin Secure Program Facility has a small number of religious texts that can be checked out for use. All religious texts in the library at the facility, including copies of the Bible and the Koran and texts of other religions are donated to the institution or are obtained by internet research done by the chaplain. The facility does not solicit donations of books or religious materials for any particular religion, have a budget with which to purchase any religious materials or texts or use facility funds to purchase religious books or publications.

All inmates at the Wisconsin Secure Program Facility are allowed to have in their cells

as personal property one soft-covered religious book or text.  Requests for religious materials must be reviewed and approved by the chaplain.  Upon request, an inmate may replace his current religious text with another one, so long as he has only one soft-covered religious text at a time.  Religious publications are not restricted by an inmate's identified religious preference.

2.  Plaintiff's request for materials on atheism

After plaintiff's transfer to the Wisconsin Secure Program Facility, he asked Chaplain Overbo to provide him with books and publications related to atheism.  No other inmate had ever requested books or publications related to atheism from Chaplain Overbo.  The chaplain had not searched for materials related to atheism on the internet or sought donations for atheism before this time, and he had no materials available.

After plaintiff requested materials on atheism, Chaplain Overbo requested materials on atheism from atheistic organizations that he found through internet research.  Only one organization, Atheism Guide, responded to his requests.  Chaplain Overbo received several pages of information related to atheism from the Atheism Guide and provided copies of these materials to plaintiff.

On January 25, 2007, plaintiff asked Chaplain Overbo to retrieve his book, <u>Natural Atheism</u>.  (Defendants do not explain from where the book was "retrieved."  Possibly,

Chaplain Overbo retrieved the book out of storage from plaintiffs' personal items.)  Plaintiff was allowed to have the book as his one religious text.  Chaplain Overbo provided plaintiff with a memorandum to show the correctional staff that this book was plaintiff's religious text.  Plaintiff never requested that Chaplain Overbo replace <u>Natural Atheism</u> with another religious text.

### E.  Out-of-Cell Time

All inmates incarcerated at the Wisconsin Secure Program Facility, including inmates in the step series program, are allowed time out of their cells to participate in recreational exercise or the law library.  The out-of-cell activities are monitored strictly to prevent illegal activities among the inmates.  Any time an inmate in step one or two of the step program is moved in the institution, at least two officers must accompany the inmate to insure the safety and security of the institution, the inmates and staff.  Out-of-cell time must be coordinated and scheduled to allow for proper security.

All inmates participating in the step program are allowed five hours a week of out-of-cell time.  Until approximately February 2007, inmates in the step program were allowed a total of five hours a week of out-of-cell time, in four out-of-cell sessions each week of one hour and 15 minutes each.  The inmate could choose to spend at most one of those four sessions each week in the law library.  Thus, inmates who used an out-of-cell session for law

11

library use would still have three out of four cell sessions of one hour and 15 minutes each for recreational or exercise activities.

Any inmate with a pending court deadline may be placed on a "priority list" that entitles the inmate to one additional session in the law library.  Inmates are encouraged to exercise in their cells.

### DISCUSSION

#### A.  Retaliation Claim

Plaintiff has alleged that defendant Hepp transferred plaintiff to the Wisconsin Secure Program Facility because he had filed a previous suit against defendant Hepp, Kaufman v. Frank, Case No. 06-C-205-C.  In retaliation cases, the plaintiff has the initial burden to prove that his protected action was a substantial or motivating factor in a defendant's actions.  Mt. Healthy Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Hasan v. United States Dept. of Labor, 400 F.3d 1001, 1005-06; (7th Cir. 2005).  Only after the plaintiff meets this initial burden does the burden shift to a defendant to prove that the "same actions would have occurred in the absence of the protected conduct."  Spiegla v. Hull, 371 F.3d 928, 943 (7th Cir. 2004).

Plaintiff has failed to meet his initial burden because he has failed to adduce evidence that his previous lawsuit against defendant Hepp was a substantial or motivating factor in

defendant Hepp's actions.  Moreover, the undisputed facts show that Hepp was not involved in plaintiff's transfer to the Wisconsin Secure Program Facility.  Therefore, I will grant defendant's motion for summary judgment on plaintiff's retaliation claim.

### B.  First Amendment Free Speech Claims

In his complaint, plaintiff stated two First Amendment Free Speech claims: defendant Taylor violated his free speech rights by dismissing a complaint for non-delivery of a letter dated September 5, 2006 and defendants Schneiter and Huibregste violated his free speech rights by upholding a prison policy under which he was denied all publications.

Under Turner v. Safley, 482 U.S. 78, 98 (1987), restrictions on a prisoner's right to free speech are permissible if they are "reasonably related to legitimate penological interests." The Turner test involves four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner retains alternatives for exercising the right; (3) the impact that accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right.  Courts have acknowledged that these factors tend to blend together and are not meant to be weighed according to any precise formula.  Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999); Amatel v. Reno, 156 F.3d 192 (D.C. Cir 1998); Aiello v. Litscher, 104 F. Supp. 2d 1068, 1075 (W.D. Wis.

13

2000).  The Turner test governs judicial review of specific applications of prison regulations as well as facial challenges.  Shaw v. Murphy, 532 U.S. 223 (2001).

Prison officials have the initial burden to show a logical connection between the censorship and their legitimate interest.  Beard v. Banks, 126 S. Ct 2572, 2581 (2006) ("Turner requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective."); King v. Federal Bureau of Prisons, 415 F.3d 634, 639 (7th Cir. 2005) ("the government must present some evidence to show that the restriction is justified").  A failure to do so makes it unnecessary to consider the remaining factors because an illogical free speech restriction is always invalid.  Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006) ("The first Turner 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement.") (citing Turner, 482 U.S. at 89, and  O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987)).

In determining whether restrictions meet these requirements, courts "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  Moreover, "where the regulations at issue concern the entry of materials into the prison, . . . a regulation which gives prison authorities broad discretion is

14

appropriate." <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 416 (1989).

1.  <u>Letter from Bob Bernard</u>

Defendants concede that a letter from Bob Bernard mailed to plaintiff on or about August 21, 2006 was not delivered to him.  (Plaintiff's complaint alleged non-delivery of a letter from Bob Bernard on or about September 5, 2006, two weeks later.  For purposes of summary judgment, I will assume plaintiff and defendants are referring to the same letter.) However, defendants contend that the letter was not delivered for reasons permissible under <u>Turner</u>.

Rather than submit the letter to the court for *in camera* review, defendants have submitted an affidavit of defendant Hepp, who reviewed a copy of the letter and then attempted to describe its contents in the affidavit without quoting the objectionable material.  Recently, in <u>George v. Smith</u>, 467 F. Supp. 2d 906, 919 (W.D. Wis. 2006), I cautioned defense counsel that when materials are withheld from an inmate and then destroyed or lost so that the court cannot review them, "[a]bsent the documents themselves or authenticated copies, defendants will be unable to prevail on a motion for summary judgment and may well face consequences for spoliation of evidence."  It should have been clear from <u>George</u> that a defendant cannot avoid submitting withheld materials for *in camera* review simply by offering characterizations and conclusory statements about them.

Almost never will an inmate be able to dispute a defendant's assertions regarding the

15

contents of withheld materials.  As I stated in <u>George</u>, to rely on defendant's "assurances that certain materials were properly denied to inmates rather than undertaking an independent review of the withheld materials" would be to grant to prison officials "an unsupervised delegation of responsibility."  <u>Id.</u> at 921.

Even if I were to overlook defendants' failure to submit the withheld materials, I would have to find that defendants have failed to establish a legitimate penological interest in withholding Bernard's letter.  Defendants attempt to walk a tightrope between adducing sufficient evidence to establish a legitimate penological interest and giving to the plaintiff during litigation what was denied in the first place.  In the affidavit submitted by defendant Hepp, the withheld letter is described with as little detail as possible.  Defendant Hepp states that the letter "makes several references to 'man/boy' relationships and to the 'NAMBLA,' which is the acronym for North American Man/Boy Love Association."  Hepp Aff., dkt. #21, ¶ 21.  From this description, defendants appear to hope that the court will defer to defendant Hepp's conclusion that the letter "can be seen as advocating" sexual relationships with children and would be counterproductive and not in the best interests of plaintiff's rehabilitation efforts.  Def. Br., dkt. #18, at 12.

Unfortunately for defendants, at summary judgment, inferences are drawn for the non-movant (plaintiff) and against the movant (defendants) where more than one inference is possible.  <u>Schuster v. Lucent Technologies, Inc.</u>, 327 F.3d 569, 573 (7th Cir. 2003).

16

Defendants do not say in what context the letter "refers" to "man/boy" relationships or "NAMBLA."   Although one possible inference is that the letter advocates "man/boy" relationships, "NAMBLA" and inappropriate sexual behavior, it is just as possible to infer that the letter condemns those things.   Defendants do not contend that penological interests are served by restricting speech that condemns or criticizes NAMBLA or man/boy relationships.   Without more, I cannot conclude that denial of the letter is rationally related to rehabilitation, as defendants propose.

In this case, defendants' failure to heed the warning in <u>George</u> will not prejudice them, because plaintiff failed to adduce evidence that any one of the named defendants was personally involved in denying him the letter from Robert Bernard.   A defendant is not liable under § 1983 unless he is personally involved in the violation of plaintiff's constitutional rights.   <u>Sheik-Abdi v. McClellan</u>, 37 F.3d 1240, 1248 (7th Cir. 1994).

In his complaint plaintiff alleged that defendant Cari Taylor was personally involved, but at summary judgment, a plaintiff cannot simply rest on his allegations; rather, he must come forward with specific facts that would support a jury's verdict in his favor.   <u>Van Diest Supply Co. v. Shelby County State Bank</u>, 425 F.3d 437, 439 (7th Cir. 2005).   The facts proposed by defendants do not establish Taylor's alleged involvement.   Moreover, although defendant Hepp does admit to reviewing the letter at some time, there are no facts in evidence that defendant Hepp was involved in rejecting delivery of the letter or reviewing

17

the decision to reject delivery of the letter.  (In fact, plaintiff never alleged that defendant Hepp was involved.)  Therefore, I will grant defendants' motion for summary judgment on plaintiff's claim that defendant Taylor violated his First Amendment right to free speech by not delivering a letter from Robert Bernard on or about September 5, 2006.

2.  No-publications rule

Plaintiff's second First Amendment claim is that defendants Schneiter and Huibregste violated his right to free expression by upholding a prison policy under which prisoners in the Wisconsin Secure Program Facility step program are denied all publications.

Before bringing suit, a plaintiff must demonstrate that he has suffered an "'injury in fact'----a harm that is both concrete and actual or imminent, not conjectural or hypothetical." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000).  Without a showing that he has suffered such an injury, a plaintiff fails to meet the "irreducible constitutional minimum" requirement of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Plaintiff has proposed no facts to show he was ever injured by the prison policy under which prisoners in the Wisconsin Secure Program Facility step program are denied all publications.  The facts proposed fail to establish that plaintiff was in the step program at all.  Without an injury, plaintiff lacks standing to litigate this claim.  Therefore, I will grant

18

defendants' motion for summary judgment on plaintiff's claim that defendants Schneiter and Huibregste violated his First Amendment rights by upholding a prison policy restricting all publications to prisoners in the step program.

### C.  Religious Exercise and Establishment Claims

#### 1.  Free exercise and RLUIPA claims

Plaintiff contends that the policy in place at the Wisconsin Secure Program Facility violated his free exercise and RLUIPA rights because he was not allowed religious publications while in the step program.  There are no facts in evidence that plaintiff was prevented from ordering publications about atheism in violation of the free exercise clause and RLUIPA, was in the step program or was in any other way injured by the no-publication policy.  Therefore, plaintiff lacks standing to litigate this claim, and I will grant defendants' motion for summary judgment on plaintiff's free exercise and RLUIPA claims.

#### 2.  Establishment clause claim

In his complaint, plaintiff alleged that defendant Huibregste violated his rights under the First Amendment establishment clause by refusing to provide him with atheist reading material while providing religious material to Christian inmates.  The undisputed facts frame the issue somewhat differently: did defendant Huibregste violate plaintiff's rights under the

19

establishment clause by maintaining a body of Christian reading materials while maintaining no reading materials on atheism?  Plaintiff has failed to adduce evidence that defendant Huibregste was personally involved in failing to stock more atheist literature or overstocking Christian literature.  Thus, defendant's motion for summary judgment will be granted on plaintiff's claim that defendant Huibregste violated his rights under the Establishment Clause.

D.  <u>Eighth Amendment Claim</u>

Finally, plaintiff alleged in his complaint that defendant Schneiter forced him to choose between out-of-cell exercise and time spent in the prison law library in accordance with prison policy, in violation of his Eighth Amendment rights.  Plaintiff has failed to propose facts that he ever chose to use any out-of-cell time to visit the law library as opposed to doing out-of-door exercise.  Once again, this means plaintiff has not established an injury in fact, and has no standing to challenge defendant's policy of requiring inmates to choose between out-of-cell exercise time and law library time.  Defendants' motion for summary judgment on plaintiff's claim that defendant Schneiter violated his rights under the Eighth Amendment will be granted.

Because plaintiff has not adduced sufficient evidence to permit a reasonable jury to find in his favor on any of his claims, it is unnecessary to address the question whether

defendants are entitled to qualified immunity.

ORDER

IT IS ORDERED that

1. Defendants Richard Schneiter, Peter Huibregste, Randall Hepp and Cari Taylor's motion for summary judgment is GRANTED.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 27th day of November, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge